## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| **Thomas Michel, an Individual, and Stephane Verdier, an Individual,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Marcin Chojnacki, an Individual, Laurena Mikosz, an Individual, Kathleen Long, an Individual, Rachel Irwin, an Individual, Page Street Properties LLC, an Illinois Limited Liability Company, TCF National Holdings, Inc., a Delaware Corporation, Anand Sheth, an Individual, Kendall Murphy, an Individual, Fairview Avenue Properties LLC, an Illinois Limited Liability Company, Mon Ami TCF LLC, an Illinois Limited Liability Company, EJ Investment Group, Inc., a Delaware Corporation, Chase Real Estate, LLC, an Illinois Limited Liability Company, Midwest Title And Closing Services LLC an Illinois Limited Liability Company, Mainstreet Property Management LLC, an Illinois Limited Liability Company, Citypoint Illinois LLC, an Illinois Limited Liability Company,**<br><br>**Defendants.** | **Case No.**<br><br>**Judge:**<br><br>**Magistrate:** |

## COMPLAINT

NOW COME the Plaintiffs Thomas Michel and Stephane Verdier, by and through their attorneys, Gaspero & Gaspero, Attorneys at Law, P.C., and in complaining against Marcin Chojnacki, Laurena Mikosz, Kathleen Long, Rachel Irwin, Page Street Properties LLC, an Illinois Limited Liability Company, TCF National Holdings, Inc., a Delaware Corporation, Anand Sheth, Kendall Murphy, Fairview Avenue Properties LLC, an Illinois Limited Liability Company, Mon Ami TCF LLC, an Illinois Limited Liability Company, EJ Investment Group, Inc., a Delaware Corporation, Chase Real Estate, LLC, an Illinois Limited Liability Company, Midwest Title and Closing Services LLC, an Illinois Limited Liability Company, Mainstreet Property Management LLC, an Illinois Limited Liability Company, Citypoint Illinois LLC, an Illinois Limited Liability Company, allege as follows:

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the Plaintiff asserts claims arising under the Racketeer Influenced and Corrupt Organizations Act 18, U.S.C. § 1962.

This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1332(a)(1) whereas the Plaintiffs is a citizen of the State of California, and the Defendants are citizens of Illinois and Delaware. The amount in controversy, exclusive of costs, exceeds $75,000.

This Court has supplemental jurisdiction over the Plaintiff's state law claims, pursuant to 28 U.S. § 1367.

## VENUE

Venue is proper in this District pursuant 18 U.S.C. § 1965 and 28 U.S. Code § 1391(c)(2), whereas multiple Defendants are residents of Illinois and the real estate at issue is located in Northern Illinois.

Venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and reside in this district.

## PARTIES

1.      Plaintiff Thomas Michel ("Michel"), an individual, is a French National and Texas citizen.

2.      Plaintiff Stephane Verdier ("Verdier"), an individual, is a French National and California citizen.

3.      Defendant Marcin Chojnacki ("Chojnacki"), an individual, is an Illinois licensed real estate broker and an Illinois citizen.

4.      Defendant Laurena Mikosz ("Mikosz"), an individual, is an Illinois licensed real estate broker and an Illinois citizen.

5.      Defendant Kathleen Long ("Long"), an individual, is an Illinois citizen and, on information and belief, was, at all times relevant herein, the paramour and roommate of Chojnacki.

6.      Defendant EJ Investment Group Inc. ("EJ Investment") is a Delaware Corporation and is a citizen of Delaware and Illinois.

7.      Defendant Mainstreet Property Management LLC ("Mainstreet Management") is an Illinois Limited Liability Company managed by EJ Investment Group.  All of Mainstreet

3

Management's members are citizens of Illinois, therefore Mainstreet Management is an Illinois citizen.

8.     Defendant Page Street Properties LLC ("Page Street Properties") is an Illinois Limited Liability Company managed by Defendant TCF National Holdings, Inc.  Page Street Properties is a citizen of Illinois in that all of the members of Page Street Properties are citizens of Illinois.

9.     Defendant TCF National Holdings, Inc. is a Delaware Corporation. Kathleen Long, an Illinois resident, is the President of TCF National Holdings, Inc. and its principal place of business is in Illinois. TCF National Holding is a citizen of Illinois and Delaware.

10.     Defendant Anand Sheth ("Sheth"), an individual, is an Illinois resident.

11.     Defendant Kendall Murphy ("Murphy"), an individual, is an Illinois resident.

12.     Defendant Fairview Avenue Properties LLC is an Illinois Limited Liability Company, solely owned and managed by Defendant Mon Ami TCF LLC., an Illinois Limited Liability Company.  All of Fairview Avenue Properties LLC's members are all citizens of Illinois and Fairview Avenue Properties LLC is an Illinois citizen.

13.     Defendant Mon Ami TCF LLC is an Illinois LLC managed by Defendant Long and Defendant Sheth.  All of Mon Ami TCF LLC's members are all citizens of Illinois and Mon Ami TCF LLC is an Illinois citizen.

14.     Defendant Chase Real Estate LLC ("Chase Real Estate") is an Illinois LLC.   All of Chase Real Estate's members are citizens of Illinois, Chase Real Estate is an Illinois citizen.

15.     Defendant Midwest Title and Closing Services LLC ("Midwest Title") is an Illinois Limited Liability Company. All of Midwest Title's members are all citizens of Illinois and Midwest Title is an Illinois citizen.

4

16.     Midwest Title is managed by XYZABC, Inc., a Delaware Corporation. Defendant Rachel Irwin is the President and Director of XYZABC, Inc.  Defendant Midwest Title provides real estate transaction services and serves as the registered agent of Defendants Page Street Properties LLC and TCF National Holdings, Inc.

17.     Defendant Rachel Irwin ("Irwin"), an individual, is an Illinois citizen and an attorney licensed to practice law in the State of Illinois. Irwin is also the General Counsel and Illinois registered agent of Defendants EJ Investment and Mainstreet Management.

18.     Defendant Citypoint Illinois LLC ("Citypoint Illinois") is an Illinois Limited Liability Company.  All of Citypoint Illinois's members are all citizens of Illinois and thus Citypoint Illinois is an Illinois citizen.

19.     Citipoint Properties appears to have been an un-incorporated enterprise organized by Chojnacki which held itself out as a real estate investment company for the purposes of inducing and capitalizing from out-of-state investors in connection with Illinois real estate.  On December 28, 2022 this un-incorporated enterprise organized itself as "Citypoint Illinois LLC," an Illinois Limited Liability Company managed by "Citypoint Group Inc.," a Delaware Corporation also organized on December 28, 2022. The allegations set forth herein cover time periods when this enterprise was both un-incorporated and incorporated.

20.     Defendants Irwin, Chojnacki, Mikosz, Mainstreet Management, and EJ Investment Group all operate out of the same office space located at 25-41 E. Main Street Suite 204, Roselle, IL 60172.

21.     Defendant TCF National Holdings (Manager of Page Street Properties LLC) and Citypoint Group Inc., the manager of the newly formed Citypoint Illinois LLC, are all located at 8 The Green Street, Dover, Delaware, 19901.

## ALLEGATIONS COMMON TO ALL COUNTS

22.     Plaintiff, Michel, a French National, resides in Texas and was looking to use his savings to invest in real estate to provide a solid investment and steady source of income.

23.     Plaintiff, Verdier, is also a French National, who resides in California and was also interested in putting his savings to work by investing in real estate.

24.     Both Plaintiffs Michel and Verdier are close friends and decided to invest together. For the most part, Plaintiff Michel took the lead in communicating with the Defendants for the events giving rise to this matter.

25.     Beginning on December 29, 2021, Defendant Page Street Properties LLC ("Page Street") was the owner of real estate commonly known as 12930 Page Court, Blue Island, Illinois (the "Page Court Property").

26.     Beginning on December 21, 2021, Defendant Fairview Avenue Properties LLC was the owner of the real estate commonly known as 12438 Fairview Avenue, Blue Island, Illinois (the "Fairview Property").

27.     This matter pertains to both the Page Court Property and the Fairview Property.

28.     In approximately July 2021, Michel learned of "CitiPoint Properties" which identified itself as a source for connecting investors to undervalued and underperforming properties – carrying the promise of rapidly increasing equity and high cash flow.

29.     This alleged connection between the target investor and the alleged owner of "off-market" properties was referred to as an offering of "directly sourced" properties.

30.     Michel sent a query to Mikosz regarding "Citipoint".

31.     Plaintiff Michel's query to Mikosz evolved into sustained text and phone interactions through which Mikosz drew Michel into the scheme giving rise to this action.

32.     Mikosz told Michel that she was a real estate broker with Chase Real Estate, which is affiliated with "Citipoint."  Mikosz told Michel that her managing broker was Chojnacki, also a Chase Real Estate agent.

33.     Mikosz and Chojnacki actively led Plaintiff to believe that since they were agents of Chase Real Estate, and because "Citipoint" is affiliated with Chase Real Estate, that the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate.

34.     At all times relevant herein, the website for CitiPoint was a virtual reflection of the website for Chase Real Estate (See printed copy of the CitiPoint website as of January 27, 2023 attached as Exhibit 1 and the Chase Real Estate Website at Exhibit 2 as February 24, 2023). Both websites are commonly revised. Prior to the revisions and at the times relevant to the facts alleged herein, the websites were of the same design motif and were nearly identical to each other.

35.     Mikosz told Michel that he would be purchasing buildings that were under-performing directly from the local landlord.

36.     Mikosz further told Michel that if Michel used Mikosz as his real estate broker through Chase and bought properties at a steep discount from the current landlords, and then had Chojnacki's Mainstreet Management professionally manage the property, there would be great cash flow and equity appreciation.

37.     The false promise that the property was owned and self-managed by a local, unprofessional landlord allowed Mikosz to foster the proposition that 1) the property could be acquired from the local individual at a bargain price and 2) once the property was managed

properly (with the help of Chojnacki's affiliate property management company, Mainstreet Management), the investor (Michel) could expect substantial cash flow.

38.     Thereafter, Mikosz began sending Michel links to a Citipoint website for different properties for his review.

## I. The Fairview Property

39.     Mikosz directed Michel to a link for a Citipoint website for the Fairview property styled "Property Financials." The Property Financials were compiled and reported by Citipoint.

40.     The Property Financials reported current positive cash flow for the Fairview Property with the property currently 100% rented. The Property Financials also promised even higher cash flow once properly managed by the new investor using Chojnacki's property management company (Mainstreet Management).   The Property Financials for the Fairview property are attached as Group Exhibit 3.

41.     Citipoint's Property Financials report that the premises for the financials are "factual" and are based on "verified information." See page one of Group Exhibit 3

42.     Citipoint's Property Financials tells the investor that "Today's Market Value" is $472,000. See page two of Group Exhibit 3.

43.     The Property Financials report included a "Rent Roll" telling the investor that the property is fully leased by tenants all current with the minor exception of a $400 balance on one of the six units. See page three of Group Exhibit 3.

44.     Mikosz represented that the Fairview Property was "turnkey" and would be profitable at the "bargain" purchase price of $450,000.  (See e-mail attached at Exhibit 4).

45.     Michel told Mikosz that he wanted to fly to Illinois to see the Fairview property. He gave Mikosz two weeks notice so that she could be sure to arrange for full access to the building.

46.     Despite giving Mikosz plenty of notice, when Michel arrived in Illinois, he was told by Mikosz that, unfortunately, he would not be permitted to see the inside of the units, and could only see the outside of the building and the common areas.

47.     When Michel insisted, Mikosz explained that they were not permitted to have access to the units in Illinois because it was not customary and would "bother the tenants."

48.     Mikosz told Michel that it was the normal course of business in Illinois for him to view the outside of the buildings and not see the inside of the units when they were occupied by tenants.

49.     Mikosz further reassured Michel as his real estate broker that she was certain that the units were in good condition.  She also reminded Michel that the Fairview property was "turnkey" and was fully rented with tenants who were paying on time.  She reminded Michel, as his real estate broker, that based upon the rent roll she provided him, the property indeed would be profitable for the "bargain" purchase price of $450,000.00.

50.     Michel believed and relied upon Mikosz's representations as his real estate broker.  Thus, believing Mikosz representations, Michel entered into a contract to purchase the Fairview Property on September 28, 2021. (See Fairview Property Contract attached as Exhibit 5).

51.     The actual reason that Mikosz could not give access to the Fairview property to Michel was because she and her Citipoint affiliates were actively and clandestinely engaged in their own undisclosed purchase of the property for $300,000 in order to then immediately sell it

9

to Plaintiffs at the grossly inflated price of $450,000. Michel's presence in Chicago was thus a threat to the Defendants and the secrecy of that undisclosed acquisition.

52.     Contrary to her representations, Mikosz had actual knowledge that Michel's purchase price of $450,000 was not a "bargain."

53.     Contrary to her representations, Mikosz had actual knowledge that Michel's counterparty in the Fairview property transaction would not be a local landlord, but instead, Mikosz's Citipoint affiliates.

54.     At the time that the said Defendants were attempting to induce Michel into the scheme, they had already contracted to buy the Fairview Property themselves for $150,000 less ($300,000) than what they would soon deceive Michel into paying for it ($450,000).

## II.  The Page Court Property[1]

55.     Mikosz then showed Michel a link for a Citipoint website for the Page Court Property similarly containing "Property Financials" for this property. The Property Financials showed current positive cash flow for the Page Court Property with the property currently 100% rented.

56.     The Citipoint Property Financials also promised even higher cash flow once properly managed by the new investor using Chojnacki's property management company (Mainstreet Management). The Property Financials for the Page Court Property are attached as Group Exhibit 4.

---

1.     Simultaneously with the Fairview Property scheme, Mikosz had invited Plaintiffs to discuss a property in Waukegan, Illinois.  That transaction commenced but was cancelled by Michel and replaced with this Page Court Property.  At present, the Waukegan transaction is not part of this proceeding. However, exhibits and correspondence between the parties sometimes refer to the aborted Waukegan transaction.

57.     The Citipoint Property Financials report that the premises for the financials are "factual" and are based on "verified information." See page one of Group Exhibit 6

58.     The Citipoint Property Financials tell the investor that "Today's Market Value" is $525,000. See page two of Group Exhibit 4.

59.     The Property Financials report included a "rent roll" telling the investor that the property is fully leased by tenants all current in their monthly payments. See page three of Group Exhibit 4.

60.     Mikosz told Michel that, while the Page Court Property was a little more expensive than the Fairview property, she loved the Page Court Property and that it was a "great deal."

61.     As with Fairview, Mikosz again represented to Michel that the Page Court Property was in good condition and fully leased with renters who were current in their rent. Mikosz represented that the Page Court Property would be profitable at the "bargain" purchase price of $525,000.

62.     Contrary to her representations, Mikosz had actual knowledge that Michel's counterparty in the transaction would not be a local landlord.

63.     Contrary to her representations, Mikosz had actual knowledge that the Page Court Property was not a bargain at a purchase price of $525,000.

64.     In fact, at the time that the said Defendants were attempting to induce Plaintiff into the scheme, they had already contracted to covertly buy the Page Court Property themselves for $380,000.

65.     Mikosz did not disclose to Michel that Defendants were purchasing the property for $145,000 less than what they would soon deceive Michel into paying for it.

66.     Believing Mikosz's misrepresentations regarding the Page Court Property, Michel

and Verdier entered into a contract to purchase the Page Court Property on October 23, 2021.

(See Page Court Property Contract attached as Exhibit 7).

### III.  Fraudulent Actions and Statements Common to Both Properties

67.     Defendants continued to deceive Plaintiffs through both transactions.

68.     Initially, Michel attempted to obtain financing through his own lender.

69.     As part of the financing process, Michel's lender sent Mikosz an email:

> **We are looking for copies of last three years tax
> returns for each property to assist with our
> underwriting process.  Would you have access to
> these?  Please let me know if you have any questions.**

> See Email (Page 8 of 10) at Exhibit 8.

70.     Mikosz forwarded the lender's email to Defendant Irwin:

> **Rachel see below. Can you provide? Lori**

> See Email (Page 8 of 10) at Exhibit 8

71.     Defendant Irwin responded to Mikosz and Michel's lender as follows:

> **Good evening Lori and Ron: The seller cannot
> provide. Hopefully you can proceed without them.
> Thank you.**

> **Rachel Irwin, Director, Midwest Title and Closing
> Services, LLC**

> See Email (Page 7 of 10) at Exhibit 8.

72.     When Michel advised his lender that the requested financial information was not

available, Michel's lender responded as follows:

> **Hi Thomas – This seems rather unusual that the seller
> won't provide any historical information. We need
> such information for appraisal purposes and for our**

**internal cash flow analysis. How were you able to
determine the viability of these properties?**

**Thanks  RON**

See Email (Page 7 of 10) at Exhibit 8

73.     When Michel told Mikosz his lender's response, Mikosz emailed the lender:

**Ron,**

**What else can be used instead of tax returns? Give me
another option to work with seller.**

**Those guys are super old on paperwork but will try
my best. I have all the valuations regarding the deal...**

**Let me know if that's what you need.
Lori**

See Email (Page 7 of 10) at Exhibit 8.

74.     Michel believed Mikosz's statements because Mikosz told Michel repeatedly that

the sellers in both transactions were local landlords who were retiring.

75.     However, contrary to her representations, at the time Mikosz made the above

statements, she knew that the ultimate "seller" in the transaction were not "guys" who were

"super old on paperwork" but instead were the Defendants.  Mikosz knew her representations

were untrue.

76.     Mikosz and Irwin were not able to get tax returns or other financial information

from the sellers to Michel's lender because Defendants had surreptitiously contracted to purchase

both the Page and Fairview properties for themselves and then sell them immediately to Michel

for a grossly inflated price, all undisclosed to Michel.

77.     Defendants made the acquisition for both the Page and Fairview properties even while Mikosz had knowingly convinced and deceived Michel that she, and Chase Real Estate, were his agents and were acting on his behalf and in his interests.

78.     Mikosz ultimately directed Michel away from his own lender and recommended her affiliated lender to get the deal done as Mikosz's lender was able to rely solely on the Citipoint Financials Mikosz provided for the subject properties, and not require tax returns or other financial information. (See Email attached as Exhibit 9).

79.     At the time Mikosz directed Michel to her lender, Mikosz referred to Michel as one of her "great clients." (See Email at Exhibit 10).

80.     Mikosz's reference to Michel as her "great client" reinforced his belief that she was his agent and broker acting on his behalf.

81.     Plaintiffs believed Mikosz and proceeded with the transaction because Mikosz repeatedly told Michel that the transactions were being handled safely through Chase Real Estate as their broker.

82.     Accordingly, Mikosz continued to describe herself to Michel as Plaintiffs' real estate agent and representative in the Page and Fairview Property transactions.  However, Mikosz actually was employed by and/or was an agent of Defendants.

83.     Defendants made further misrepresentations during the transactions for both properties.

84.     For example, during the final loan processing, the lender was concerned why the owner on a title report was different than that specified earlier on the PSA (Purchase Sale Agreement).

14

85.     Lenders in property purchases always review title reports to confirm, at a minimum, that their borrower is receiving the property from the correct party on title.

86.     On the Page Court Property, Michel's lender sent an email to Defendants Lori Mikosz and Rachel Irwin:

> **Sent: Wednesday, February 9, 2022  10:23 AM**
> **Subject: Re: FINAL PROCESSING-Investment**
> **Property Loan Exchange**
>
> **Lori/Rachel [Defendants Mikosz and Irwin],**
>
> **Please provide an explanation as to why the seller on the PSA is not the same as the Owner of Record. Thank you!**
>
> See Email attached as Exhibit 11.

87.     Defendant Irwin responded:

> **On 2022-02-09 10:24, Rachel Irwin wrote:**
>
> **Krystal: I'm confused. The seller on the contract shows "OOR" which means owner of record. Owner of record is Page Street Properties LLC... my client.**
>
> **Sincerely,**
> **Rachel Irwin**
> **Director of Midwest Title and Closing Services LLC**
>
> (See Email attached as Exhibit 11.)

88.     The "Owner of Record" at the time of the Purchase Sale Agreement of October 23, 2021 was not Page Street Properties LLC, as asserted by Irwin. It was L&M Buildings LLC-1, the "long-time owner" and "local landlord."

89.     Page Street Properties was not the Owner of Record until they purchased it on or about December 29, 2021, over two months after the Purchase Sale Contract to Plaintiffs.

15

90.     Irwin's misleading response was an effort to keep the lender from discovering and revealing the Defendant's "switcharoo" scheme wherein the Defendants needed the transfer between the long-time owner/local landlord and themselves to remain hidden.

91.     Defendant Irwin knew this was true because as attorney for the seller, she had control over the ordering and the timing of the title reports for both transactions.

### III. The Real Estate Closings for Both Properties

92.     On January 19, 2022, Michel (through his LLC) closed on the Fairview Property. The purchase price was $450,000.

93.     Contrary to the representations of Defendants, seller was not an "old" landlord but was an entity owned and controlled by Long (Chojnacki's paramour and cohabitant) and Sheth.

94.     Defendants acquired it for themselves from the true long-time owner for $300,000.00.

95.     Defendant Chase Real Estate, LLC received a $13,500.00 commission at the closing as Listing Agent.

96.     Defendant Midwest Title (owned and or controlled by Irwin) received a payment of $750.00 as a "Closing Coordination fee."

97.     On February 11, 2022, Michel and Verdier (through their LLC) closed on the Page Street Contract, at which time the Plaintiff acquired title to the Page Court Property. The purchase price was $525,000.

98.     Defendant Page Street Properties LLC (owned and/or controlled by Defendant Long, Chojnacki's then - paramour and roommate) purchased the Page Court Property on December 29, 2021 - less than two months prior.  Seller was not an old retiring landlord, contrary to the representations of Defendant Mikosz.

16

99.     The purchase price Defendant Page Street Properties LLC paid for the Property was $380,000.

100.    Defendant Chase Real Estate, LLC received an $18,375.00 commission at the closing as Listing Agent.

101.    Defendant Midwest Title (owned and or controlled by Irwin) received a payment of $750.00 as a "Closing Coordination fee."

102.    Mikosz, Chojnacki and Chase Real Estate at all times held themselves out to be agents of and acting on behalf of Plaintiffs.

103.    At no time did Defendants disclose any conflict of interest.

104.    At all times herein, Defendant Irwin was acting as an agent of Defendant Midwest Title and of Fairview Avenue Properties LLC and Page Street Properties LLC.

105.    Midwest Title through its agent Irwin plays a significant role in the transactions by providing registered agent services to the various puppet entities, housing various legal operations appurtenant to the entities and transactions, as well as charging the Plaintiff for some unspecified services described in the closing statement as "Closing Coordination Fee."

106.    As stated above, Defendants Irwin, Chojnacki, Mikosz, Midwest Title, EJ Investment Group and Mainstreet Management are all located at and operate out of the same office space.

107.    Defendants Chojnacki, Long and Mikosz made misrepresentations to Michel to induce him to consummate the subject transactions.

108.    Defendants did not disclose that they had a conflict of interest in that they were an owner and/or controller of the Fairview Property and that Chojnacki's paramour and roommate Long was the owner and/or controller of the Page Court Property.

17

109.    Defendants Mainstreet Management, acting through Defendant Chojnacki and Defendants Page Street Properties LLC and Fairview Avenue Properties LLC fraudulently misrepresented the condition of the properties to Plaintiffs.

## IV.  The Rent Roll Fraud

110.    Contrary to the representations of Defendants, Michel learned that many of his units in the Fairview Property were either vacant, severely delinquent, or uninhabitable.

111.    Commencing immediately after the closing of the first property, the Plaintiffs were unable to collect rents on four of the six units.

112.    Part of the Defendant's scheme was to convince the Plaintiffs to use Mainstreet Management to manage the property and collect rents.

113.    Immediately upon taking title to both properties, Plaintiffs learned that the information provided in the Rent Rolls was not accurate.  In the case of the Fairview Property, four of the six units were in some form of distress because no rents were received for those units.

114.    Plaintiffs have no way of knowing whether the units were occupied and failing to pay or whether they were not occupied at all and the vacancy was concealed by the Defendants.

115.    In any event, Plaintiffs have never received current and full payment on all units since the time of purchase until the present.  Due to the numerous tenants not paying rent, it is necessary to proceed with numerous eviction proceedings for the subject properties.

## V.  Property Conditions and Code Violations Fraud

116.    Contrary to the representations of Defendants, Plaintiffs learned that the Defendants did not comply with the Blue Island inspection and real estate transfer requirements as required by Blue Island Ordinances.  The City of Blue Island had been directing building code

violations at the Defendants prior to the transaction, as well as placing a transfer restriction on the Page Deed. (See Exhibits 12-16).

117. While all the while Defendant Mikosz was assuring the Plaintiffs that the properties were in great condition and required no repairs.

118. Defendants' misrepresentations as to violations and failure to comply with Blue Island real estate transfer inspection and approval requirements resulted in fines and/or citations to Plaintiffs.

119. Despite the properties being noncompliant with Blue Island ordinances, and despite both properties having vacancies and uninhabitable units, Defendants, through their property management company Mainstreet, have charged Plaintiffs for enormous and repeating unidentified charges, and have withheld and/or otherwise refused to have any tenant funds received by them turned over to Plaintiffs.

120. Defendants have attempted to induce Michel to repeat the scam with additional properties.

121. Defendants have treated other individuals or entities in the same illegal manner alleged by Michel. There are eight known specific additional individuals and/or entities who were similarly defrauded by precisely or nearly precisely the same pattern of artifices and fraudulent misrepresentations as set forth in this Complaint.

122. The Defendants are, at present, continuing to lure investors into the enterprise using the same scheme and under the same guises as those set forth herein. Accordingly, the conduct alleged herein constitutes the Defendants' regular method of conducting their business.

**COUNT I: RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT
(RICO) - 18 U.S.C. 1962(c), (d)**

**(Defendants Chojnacki, Mikosz, Page Street Properties LLC,**

**Fairview Avenue Properties LLC, Citypoint Illinois, LLC)**

Plaintiff Michel re-states and re-alleges Paragraphs 1 through 122 as though fully stated

herein.

**RICO Persons**

123. Defendants Chojnacki, Mikosz, Page Street Properties LLC, Fairview Avenue

Properties LLC, Citypoint Illinois, LLC, are each capable of holding a legal or beneficial interest

in property, and therefore each is a "person" within the meaning of 18 U.S.C. § 1961(3).

**The Rico Enterprise**

124. Defendants Chojnacki, Mikosz, Page Street Properties LLC, Fairview Avenue

Properties LLC, and Citypoint Illinois, LLC, were associated in fact, and constituted an

"enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), which

enterprise was engaged in, and the activities of which affected, interstate commerce. This

enterprise shall be referred to herein as the "CitiPoint Enterprise."

125. The CitiPoint Enterprise constituted an ongoing organization whose members

functioned as a continuing unit for a common purpose of achieving the objectives of the

enterprise.

126. The primary purpose of the CitiPoint Enterprise was to lure and then fleece

unsuspecting real estate investors for the financial benefit of CitiPoint.

127. For the purpose of 18 U.S.C. § 1962(c), and during the periods relevant to this

complaint, said Defendants each had authority within the CitiPoint Enterprise, and/or conducted

or participated, directly or indirectly, in the conduct of the CitiPoint Enterprise's affairs through the pattern of racketeering activity described herein.

## Effect on Interstate Commerce

128.    The CitiPoint Enterprise conducted its racketeering activity, in part, using the interstate mails and wire communications, including by use of the telephones, by electronic transfers of funds, and through the mailing of checks.

## Predicate Acts of Racketeering Activity

129.    Through the CitiPoint Enterprise, or in conspiracy with it, the Defendants conducted, engaged in, and participated in a pattern of racketeering activity, consisting, at a minimum, of the following predicate acts: (a) multiple violations of Title 18, United State Code, Sections § 1341, 1343, and 1346 (mail fraud and wire fraud). The scheme to defraud was advanced, concealed or furthered by the use of the U.S. mail or wires.

130.    Specifically, the Defendants' predicate acts include, but are not limited to, the following:

a)    In furtherance of a scheme or artifice to defraud as defined in 18 U.S.C. §§ 1341 & 1346, and with specific intent to defraud, Defendants placed ads on the Internet and on social media with the intent to induce investors to participate in "directly sourced" real estate opportunities when they actually intended to sell the duped investor their own significantly marked-up property.

b)    Engaging in a sustained fiction with the victim, replete with misrepresentations and calculated omissions to keep the investor misled that their transactional counterpart was an "old retiring couple" selling the property directly to the investor at bargain level pricing.

c)    Fabricating occupancy records of the property to mislead the investor with the falsehood that that property was fully-leased and the tenant payments were fully current.

d) Concealing and misrepresenting known significant building code and occupancy violations from the investor with the intent of inducing the investor to enter into the transaction.

e) Engaging in post-closing fraudulent activity in the management of the property by 1) continued concealment of and falsification of rent records; 2) continued concealment of building occupancy and code violations.

### Pattern of Racketeering Activity

131.     The Defendants acted, and conspired to act together, and in association with others knowingly and repeatedly committed the above fraudulent acts in furtherance of and for the purpose of enriching themselves financially and to otherwise further the ends of the CitiPoint Enterprise.

132.     The predicate acts described above were related to one another as part of a common scheme or plan.

133.     Such unlawful conduct constituted a continuous pattern of racketeering activity beginning as early as July 2021, continue through the present, and are likely to continue into the foreseeable future.

### Conspiracy (18 U.S.C. § 1962(d))

### (Defendants Long, Irwin, Midwest Title and Closing Services LLC, EJ Investments, Inc., Chase Real Estate, LLC, Mainstreet Property Management, LLC, TCF National Holdings, Inc., Long, Sheth, and Kendall Murphy)

134.     As described above, Defendants Midwest Title and Closing Services LLC, Irwin, EJ Investments, Inc., Chase Real Estate, LLC, Sheth, Long, and Murphy did knowingly agree to facilitate the CitiPoint Enterprise Defendants, and those acting in concert with them, to violate 18 U.S.C. § 1962(c) for the purpose of achieving and profiting from the racketeering activities described above.

22

135.     In furtherance of that agreement, the Defendants knowingly and intentionally agreed and conspired to commit at least two of the predicate acts set forth above and they did so with the knowledge and intent that such acts were in furtherance of the foregoing pattern of racketeering.

136.     Specifically, the Defendants described herein were either affiliated or controlled by the CitiPoint Enterprise Defendants

137.     The Defendants described herein knowingly provided auxiliary services with respect to the marketing, negotiation, and transaction of real estate closing services which were necessary to and facilitated the accomplishment of the goals of the CitiPoint Enterprise.

138.     Defendant Chase Real Estate LLC provided the cover of a legitimate real estate brokerage enterprise, oversaw the conduct and behavior of Mikosz and Chojnacki, and received a commission from Page Street Properties LLC and Fairview Avenue Properties LLC (the sellers) notwithstanding the fact that at all relevant times herein, they held themselves out as Plaintiffs' agent.

139.     Defendant Irwin is forming at least some of the layers of shell entities, providing misinformation about the real estate, acting as officers and/or principals for the enterprise's entities, and acting as their counsel in the negotiations and transactions wherein the real estate is conveyed to the investor, or in this matter, acts as counsel for the fictitious "old" local landlord.

### Injuries to the Plaintiff Business and Property

140.     As a direct and proximate cause of the described racketeering activities and violations of 18 U.S.C. § 1962(c), and the described conspiracy in violation of 18 U.S.C. § 1962(d), the Michel has been injured in their business and property. The Defendants' racketeering activities caused Plaintiffs to collectively invest $975,000 in real estate which the

Defendants had actual knowledge was worth far less and said racketeering activities directly resulted and were the proximate cause of the Plaintiffs' loss of invested funds.

141.    The Defendants' racketeering activities further caused Plaintiffs substantial damages due to the fact that the Properties were either not certified for occupancy and thus un-rentable due to multiple severe violations of municipal occupancy and code violations that were known and hidden from Plaintiffs, or requiring significant repairs at a substantial expense to Plaintiffs.

142.    The Defendants racketeering activities further caused the Plaintiffs' substantial damages due to the fact that numerous tenants in the Properties were not paying rent and eviction proceedings were necessary.

143.    These injuries were a foreseeable consequence of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), and their conspiracy in furtherance of those racketeering violations, in violation of 18 U.S.C. § 1962(d).

**WHEREFORE**, Plaintiffs respectfully request the Court to enter judgment in their favor and against each of the CitiPoint Enterprise Defendants and their conspirators and order the following relief:

(a)  All damages proven pursuant to RICO, trebled as permitted by law;

(b)  Punitive damages, attorney fees, and costs as permitted by law; and

(c)  Such other and further relief as the Court may deem just and appropriate.

### COUNT II: COMMON LAW FRAUD

144.    Plaintiffs restate Paragraphs 1 through 143 as if fully set forth herein.

145.    Defendant Mikosz and Chojnacki's statements set forth above concerning the Properties, their ownership, their condition, and their leased status were false statements of material fact.

146.    Defendants Mikosz and Chojnacki made the statements with knowledge that they were false.

147.    Defendants Mikosz and Chojnacki made the false statements with the intention to induce Plaintiffs to purchase the Property under falsified premises.

148.    Plaintiffs reasonably and justifiably relied on the said Defendants' false statements.

149.    Plaintiffs suffered damages due to reliance on the false statements.

150.    Accordingly, the Defendants' statements, Plaintiffs' reliance thereon, and resulting damages constitute common law fraud.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment in their favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT III: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (ILLINOIS CONSUMER FRAUD ACT)

151.    Plaintiffs re-state Paragraphs 1 through 150 above as if fully set forth herein.

152.    Defendants Mikosz and Chojnacki's statements, including but not limited to their statements set forth above concerning the properties, their condition, and their leased status were false statements of material fact and constituted a deceptive act or practice by the said Defendants.

153.    Defendants Mikosz and Chojnacki intended that Plaintiffs rely on the deception.

154. The occurrence of the deception was in the course of conduct involving trade and commerce.

155. The deceptions were originated by residents of Illinois, concern Illinois real estate, and have resulted in violations of Illinois municipal laws. Accordingly, the conduct alleged herein directly and indirectly affect the State of Illinois.

156. The deception was the proximate cause of actual damage to Plaintiffs.

157. Accordingly, the conduct of deception perpetrated by Defendants Mikosz and Chojnacki constitute a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT IV: VIOLATION OF THE ILLINOIS REAL ESTATE LICENSE ACT

158. Plaintiffs re-state Paragraphs 1 through 157 above as if fully set forth herein.

159. Defendants Mikosz and Chojnacki provided real estate services in this transaction as agents of Chase Real Estate LLC.

160. Defendants Mikosz, Chojnacki and Chase Real Estate LLC were "Licensees" under the Real Estate License Act, 225 ILCS 454/1-1 *et seq.*

161. Section 15-25 of the Real Estate License Act mandates that:

> Licensees shall treat all customers honestly and shall not negligently or knowingly give them false information.

162. Section 15-5 of the Real Estate License Act specifies that:

This Article 15 may serve as a basis for private rights of action and defenses by sellers, buyers, landlords, tenants, real estate brokers, and real estate salespersons.

163. Defendants Mikosz, Chojnacki and Chase Real Estate LLC breached the requirements of the Real Estate License Act by committing the following actions:

    a) fraudulently misrepresenting that they represented the Plaintiffs as buyer when in actuality they represented, were affiliates of and/or were direct agents of the seller;

    b) fraudulently misstating the condition of the Property;

    c) fraudulently misstating the tenancy of the Property;

    d) fraudulent falsification of the purported rent roll;

    e) fraudulently misrepresenting to the Plaintiffs that the seller in the transaction was a directly sourced, off-market seller when in truth the Seller was comprised of, directly affiliated with or controlled by the Defendants themselves or were agents thereof;

164. Plaintiffs relied on Defendants Mikosz, Chojnacki and Chase Real Estate LLC's statements and suffered damages therefrom.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT V:  NEGLIGENT MISREPRESENTATION

165. Plaintiffs re-state Paragraphs 1 through 164 above as if fully set forth herein.

166. Defendants Mikosz and Chojnacki's statements, including but not limited to their statements set forth above concerning the properties, their condition, and their leased status were careless and/or false statements of material fact.

167.    Defendants Mikosz and Chojnacki made the careless and/or false statements through carelessness or negligence in ascertaining the truth of the statement by the party making it.

168.    Defendants Mikosz and Chojnacki's false statements were made with intention to induce Michel to act.

169.    Plaintiffs' actions in consummating the transaction were in reliance on the false statements.

170.    Plaintiffs' reliance was the proximate cause of damage to Plaintiffs.

171.    Defendants Mikosz and Chojnacki's statements therefore constitute Negligent Representation.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment in his favor and against DEFENDANTS in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

**COUNT VI**

**UNJUST ENRICHMENT**

172.    Plaintiffs reallege and incorporate by reference herein the allegations of Paragraphs 1-171 of this Complaint, as if fully set forth herein.

173.    Defendants did conspire and collude in the undertaking to mislead Plaintiffs into believing he would be acquiring investment property directly from a long-time seller.

174.    Plaintiffs believed and relied on Defendants' scheme of misleading statements and conduct when they agreed to buy the Properties from Defendants, who had secretly already

purchased the Properties directly from the long-time seller for $257,000 less than the amount that they fraudulently induced Plaintiff to pay.

175.    The Defendants also charged Plaintiffs unnecessary fees and costs without justification.

176.    The direct and proximate cause of the Defendants was to deprive the Plaintiffs of the fair bargain they had promised them.

177.    As a consequence of receiving and retaining the amounts in excess of $257,000, the Defendants have unjustly retained a benefit to the Plaintiffs' detriment, and Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment in their favor and against each of Defendants and order the following relief:

a) Payment to the Plaintiffs of the benefit that they received as a consequence of their fraudulent misrepresentations being the difference between the purchase price of the Property paid by Plaintiffs and that paid by themselves or such other amount to be proven at trial;

b) Punitive damages, attorney fees, and costs as permitted by law; and

c) Such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,

/s/Carmen Gaspero
_____

/s/Lisa Gaspero
_____

Thomas Michel
By: His Counsel


Gaspero & Gaspero
Attorneys at Law, P.C.
Carmen A. Gaspero
Lisa M. Gaspero
2001 Butterfield Rd., Suite 1022
Downers Grove, Illinois 60515
630-687-9700