IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS MICHEL and STEPHANE VERDIER, | ) ) ) |
| *Plaintiffs*, | ) No. 23 C 2546 ) |
| v. | ) Judge Virginia M. Kendall ) |
| MARCIN CHOJNACKI, *et al.*, | ) ) |
| *Defendants*. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Thomas Michel and Stephane Verdier claim Defendants Laurena "Lori" Mikosz and Marcin Chojnacki tricked them into buying two run-down apartment buildings. While holding themselves as Plaintiffs' real-estate brokers, Mikosz and Chojnacki allegedly fed Plaintiffs false assurances about the buildings' condition and profitability. Behind the scenes, Mikosz's and Chojnacki's associates, the remaining Defendants, through "puppet entities," bought the buildings and resold them to Plaintiffs at significant markups. Plaintiffs sued, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d), and various state-law claims. (Dkt. 2). Defendants now move to dismiss. (Dkts. 32). For the reasons below, the motion [32] is denied.

**BACKGROUND**

Plaintiffs and friends Thomas Michel, a Texas citizen, and Stephane Verdier, a California citizen, hoped to invest their savings together in real estate. (Dkt. 2 ¶¶ 1–2, 22–24).[1] Around July 2021, Michel learned about CitiPoint Properties ("CitiPoint"), a company that helped real-estate

---

[1] At the time, CitiPoint was an "un-incorporated enterprise," organized by Defendant Marcin Chojnacki, that appeared to be a real-estate investment firm. (*Id.* at ¶ 19). Later, on December 28, 2022, CitiPoint reorganized as Citypoint Illinois, LLC, which is owned and controlled by nonparty Citypoint Group, Inc. (*Id.*)

1

investors find undervalued and underperforming properties—so-called "directly sourced" properties. (*Id.* at ¶¶ 28–29). CitiPoint promised "rapidly increasing equity and high cash flow." (*Id.* at ¶ 28). Interested in the proposition, Michel sent a query about CitiPoint to Defendant Lori Mikosz, who was in Illinois. (*Id.* at ¶ 30). Mikosz replied that she and Chojnacki were real-estate brokers with Chase Real Estate, LLC ("Chase RE"), an affiliate of CitiPoint. (*Id.* at ¶ 32). Through "sustained text and phone interactions," Mikosz explained that Michel would be "purchasing buildings that were underperforming directly from the local landlord." (*Id.* at ¶¶ 31, 35). By purchasing property at a "bargain" from "local landlords" and using Defendant Mainstreet Property Management LLC ("Mainstreet") as a property-management service, Mikosz proposed, Plaintiffs could expect "substantial cash flow." (*Id.* at ¶¶ 35–37).

Mikosz sent Michel links to pages on the CitiPoint website with information about two properties Blue Island, Illinois, which he and Verdier later purchased: 12438 Fairview Avenue (the "Fairview Property") and 12930 Page Court (the "Page Property"). (*Id.* at ¶¶ 25–26, 39, 55). Mikosz provided financials, including rent rolls showing that both Properties were fully leased and all tenants were current on rent, except for a $400 balance on one of the six units in the Fairview Property. (*Id.* at ¶¶ 43, 59; Dkts. 2-3, 2-8). Moreover, the financials promised greater cash flow if Plaintiffs used Mainstreet to manage the Properties. (Dkt. 2 ¶ 56). Michel gave Mikosz two weeks' notice that he intended to fly to Illinois to see the Fairview Property, but when he arrived, Mikosz said that he could not tour the units and could only see the common areas and outside of the building. (*Id.* at ¶¶ 45–46). Still, Mikosz insisted that both Properties were in good condition, and she repeated that their sellers were "local landlords who were retiring." (*Id.* at ¶¶ 46, 74). On September 28, 2021, Mikosz emailed Michel describing the Fairview Property as "turnkey," requiring "[n]o rehab." (*Id.* at ¶ 44; Dkt. 2-4). At the "bargain" purchase prices of $450,000 for the

2

Fairview Property and $525,000 for the Page Property, Mikosz assured Plaintiffs that their investments would be profitable. (Dkt. 2 ¶¶ 49, 61). Believing Mikosz's representations, Plaintiffs entered contracts to purchase the Properties on September 28 and October 23, 2021, and closed in January and February 2022. (*Id.* at ¶¶ 50, 66, 92, 97; Dkts. 2-5, 2-7).

During the financing process, on October 21, 2021, Michel's lender sent Mikosz an email requesting the Properties' tax returns for the last three years. (Dkt. 2 ¶ 69; Dkt. 2-8 at 8–9). She forwarded the email to Defendant Rebecca Irwin, who replied: "The seller cannot provide." (Dkt. 2 ¶¶ 70–71; Dkt. 2-8 at 7–8). After Michel noted the unusual nature of a seller being unable to provide that information, Mikosz explained that the seller was "super old on paperwork," but she had "all the valuations regarding the deal." (Dkt. 2 ¶¶ 72–73; Dkt. 2-8 at 7). Mikosz then steered Michel toward her affiliated lender who did not need any tax returns. (Dkt. 2 ¶ 78; Dkts. 2-9, 2-19). Michel agreed, believing Mikosz was acting as his agent and broker and the transaction was being conducted safely through Chase RE. (Dkt. 2 ¶¶ 80–82).

Unbeknownst to Plaintiffs, Defendants could not get the tax returns or other financial information because Defendants were themselves purchasing the Properties to resell to Plaintiffs at inflated prices. (*Id.* at ¶ 76). On February 9, 2022, Michel's lender noticed the owner of record for the Page Property was L&M Buildings LLC-1—not the seller in the purchase agreement, Defendant Page Street Properties LLC ("Page Street"). (*Id.* at ¶¶ 86, 88; Dkt. 2-11). When Michel's lender raised this discrepancy, Irwin deflected and reassured the lender that the owner of record was Irwin's client, Page Street. (Dkt. 2 ¶ 87). But Page Street had not purchased the Page Property until December 29, 2021, two months after Plaintiffs' entered into the purchase contract. (*Id.* at ¶¶ 88–89). Page Street, in turn, was owned by TCF National Holdings, Inc. ("TCF National") where Defendant Kathleen Long—Chojnacki's roommate and "paramour"—served as the

3

president. (*Id.* at ¶¶ 8–9, 98). Similarly, Defendants purchased and resold the Fairview Property through the entity Defendant Fairview Avenue Properties LLC ("Fairview Avenue"), which is solely owned and managed by Defendant Mon Ami TCF LLC ("Mon Ami"). (*Id.* at ¶ 12). Long and Defendant Anand Sheth managed Mon Ami. (*Id.* at ¶ 13).

Throughout the dealings with Plaintiffs, Irwin acted on behalf of Fairview Avenue, Page Street, and Defendant Midwest Title and Closing Services LLC ("Midwest Title"). (*Id.* at ¶ 104). Through Midwest Title, Irwin provided "registered agent services to the various puppet entities"; she housed "various legal operations" relating to the entities and deals; and she charged Plaintiffs a fee for "closing coordination." (*Id.* at ¶ 105). Midwest Title—managed by nonparty XYZABC, Inc., of which Irwin is the president—shares office space with Irwin, Chojnacki, Mikosz, Mainstreet, and Defendant EJ Investment Group Inc. ("EJ Investment"), which owns and controls Mainstreet. (*Id.* at ¶¶ 6–7, 16–17, 105–06). Chase RE received $31,875 in commissions at the closings. (*Id.* at ¶¶ 95, 100).

After taking ownership, Plaintiffs learned that the Properties had no "old" landlord sellers. (*Id.* at ¶ 93). Nor were the purchase prices—$450,000 for the Fairview Property and $525,000 for the Page Property—"bargains" since Defendants purchased them for $300,000 and $380,000, respectively. (*Id.* at ¶¶ 51, 64). Many of the Fairview Property's units were vacant, delinquent in rent, or uninhabitable. (*Id.* at ¶ 110). The rent rolls for both Properties were inaccurate, and Plaintiffs could not discover occupancy or rent information as Mainstreet concealed such information. (*Id.* at ¶¶ 112–14). Numerous tenants were not current on rent, so Plaintiffs also had to engage in eviction proceedings. (*Id.* at ¶ 115). To boot, Defendants did not follow Blue Island inspection and real-estate-transfer requirements, and the Properties were not up to building code. (*Id.* at ¶ 116). Blue Island even placed a transfer restriction on the Page Property's deed. (*Id.*) As

4

a result, Plaintiffs received fines and citations. (*Id.* at ¶ 118). Despite these issues, Defendants, through Mainstreet, have charged Plaintiffs for unexplained costs and withheld any funds that tenants have paid. (*Id.* at ¶ 119). Defendants have tried to "repeat the scam" by offering Michel additional properties. (*Id.* at ¶ 120). Defendants have allegedly scammed at least eight other investors like Plaintiffs. (*Id.* at ¶¶ 121–22).

Michel and Verdier filed this suit on April 24, 2023. (Dkt. 2).[2] In Count I of the Complaint, Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c), (d). (*Id.* at ¶¶ 123–43). Count II is a common-law fraud claim against Mikosz and Chojnacki. (*Id.* at ¶¶ 144–50). Count III alleges that Mikosz and Chojnacki violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 *et seq.* (*Id.* at ¶¶ 151–57). Count IV alleges Mikosz, Chojnacki, and Chase RE violated the Illinois Real Estate License Act (IRELA), 225 ILCS 454/1 *et seq.* (*Id.* at ¶¶ 158–64). Count V brings a negligent-misrepresentation claim against Mikosz and Chojnacki. (*Id.* at ¶¶ 165–71). Last, Count VI brings an unjust-enrichment claim against all Defendants. (*Id.* at ¶¶ 172–77). Chase RE, joined by the remaining Defendants, moves to dismiss the Complaint for failure to state a claim. (Dkt. 32; *see also* Dkts. 34–37).

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

[2] This is one of eleven related actions proceeding before this Court. *See* Amended Complaint, *Malik v. Prairie Raynor LLC*, No. 23-cv-01182 (N.D. Ill. Mar. 2, 2023); Complaint, *Shankar v. Fairview Ave. Props. LLC*, No. 23-cv-01469 (N.D. Ill. Mar. 9, 2023); Complaint, *Abbas v. Mikosz*, No. 23-cv-01691 (N.D. Ill. Mar. 17, 2023); Complaint, *Sor v. TCF Nat'l Holdings, Inc.*, No. 23-cv-02401 (N.D. Ill. Apr. 18, 2023); Complaint, *Chen v. Chojnacki*, No. 23-cv-02520 (N.D. Ill. Apr. 21, 2023); Complaint, *Said v. Chojnacki*, No. 23-cv-02858 (N.D. Ill. May 5, 2023); Amended Complaint, *Haynes v. Fairview Ave. Props. LLC*, No. 23-cv-01596 (N.D. Ill. May 16, 2023); Complaint, *Stafford v. Chojnacki*, No. 23-cv-03173 (N.D. Ill. May 19, 2023); Complaint, *Hui v. Chojnacki*, No. 23-cv-03430 (N.D. Ill. May 31, 2023); Complaint, *Fernandez v. Chojnacki*, No. 23-cv-04406 (N.D. Ill. July 7, 2023).

*Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)).

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularly the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, a plaintiff must "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

## DISCUSSION

**I.    Racketeer Influenced and Corrupt Organizations Act (RICO) (Count I)**

In Count I, Plaintiffs allege that Chojnacki, Mikosz, Page Street, Fairview Avenue, and Citypoint Illinois (collectively, "the § 1962(c) Defendants") violated § 1962(c), (Dkt. 2 ¶¶ 123–33), while the remaining Defendants Long, Irwin, Midwest Title, EJ Investment, Chase RE, Mainstreet, TCF National, Sheth, and Murphy (collectively, "the § 1962(d) Defendants") violated § 1962(d), (*id.* at ¶¶ 134–39). Defendants challenge Plaintiffs' claims under both subsections. Before diving into the RICO allegations, it is worth noting that the complaints in the ten related cases pending before this Court—all describing similar schemes to defraud other plaintiffs by the

same or similar defendants[3]—give Plaintiffs' claims a plausibility boost. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) ("It is appropriate to accord limited corroborative weight to allegations in another's lawsuit.").

### A. Section 1962(c)

Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964(c) "empowers private parties to bring lawsuits against those engaged in racketeering activity when that activity has caused them harm." *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1093 (7th Cir. 2018) (citing *Rotella v. Wood*, 528 U.S. 549, 557 (2000)). To state a claim under § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *accord Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 587–88 (7th Cir. 2017).

#### 1. Conduct of an Enterprise

A plaintiff's first step under § 1962(c) is to identify an "enterprise." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (citation omitted). An "enterprise" means "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also Walgreen*, 719 F.3d at 853 (observing that the statutory definition of "enterprise" is construed broadly). An "association-in-fact" enterprise has

---

[3] *See* Amended Complaint, *Malik*, No. 23-cv-01182; Complaint, *Shankar*, No. 23-cv-01469; Complaint, *Sor*, No. 23-cv-02401; Complaint, *Chen*, No. 23-cv-02520; Complaint, *Abbas*, No. 23-cv-1691; Complaint, *Said*, No. 23-cv-02858; Amended Complaint, *Haynes*, No. 23-cv-01596; Complaint, *Stafford*, No. 23-cv-03173; Complaint, *Hui*, No. 23-cv-03430; Complaint, *Fernandez*, No. 23-cv-04406.

7

"three structural features: [1] a purpose, [2] relationships among those associated with the enterprise; and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009); *Sabrina*, 869 F.3d at 588. Put simply, this type of enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 946 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Separate from the RICO enterprise, the plaintiff must point to a "person"—that is, the defendant. *Walgreen*, 719 F.3d at 853 (citing *Cedric Kushner*, 533 U.S. at 161); *see also Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO."). "[T]hat 'person' must have conducted or participated in the conduct of the *enterprise's* affairs, not just its own affairs." *Walgreen*, 719 F.3d at 854 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)) (cleaned up). In this context, conduct refers to a defendant's operation or management of the enterprise. *See Sabrina*, 869 F.3d at 589 (citing *Reves*, 507 U.S. at 179).

Here, Plaintiffs have sufficiently pleaded an association-in-fact enterprise with purpose, relationships, and longevity. They allege that the § 1962(c) Defendants—which no one disputes are RICO "persons"— "were associated in fact" as the "CitiPoint Enterprise." (Dkt. 2 ¶¶ 124–25). That enterprise's "primary purpose . . . was to lure and then fleece unsuspecting real estate investors" for financial gain. (*Id.* at ¶ 126). To ensure the CitiPoint Enterprise's profit at the expense of investors like Plaintiffs, its members allegedly worked on both sides of real-estate transactions. Mikosz and Chojnacki worked together from their shared office, doing business as CitiPoint (later, as Citypoint Illinois). After drawing Plaintiffs in with promises of too-good-to-be-true investment opportunities, Mikosz and Chojnacki purported to represent Plaintiffs as real-

8

estate brokers in their purchase of the Properties. Mikosz and Chojnacki hindered Plaintiffs' attempts to perform due diligence, while encouraging Plaintiffs to trust their numerous and repeated misstatements about the Properties' condition and profitability. After Plaintiffs agreed to buy the Page Property for $525,000, Long (Chojnacki's paramour and roommate), through TCF National and Page Street, purchased it for $380,000 and resold it to Plaintiffs at a $145,000 profit. Similarly, before Plaintiffs agreed to buy the Fairview Property for $450,000, Long and Sheth, through Mon Ami and Fairview Avenue, purchased it for $300,000 and resold it Plaintiffs at a $150,000 profit. Behind the scenes, Irwin helped pulled the strings on the complex web of "puppet entities" that helped shield the conflicts of interest from view.

The sophisticated coordination and relationships among Defendants on both sides of Plaintiffs' purchase reflect "an unusual degree of economic interdependence" that helps nudge the existence of the CitiPoint Enterprise across the plausibility threshold. *See Bible v. U.S. Aid Funds, Inc.*, 799 F.3d 633, 656 (7th Cir. 2015); *see also, e.g.*, *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384, 388–89 (7th Cir. 2010) (holding that the plaintiff adequately alleged an enterprise by pointing to a coordinated fraudulent scheme); *cf. Walgreen*, 719 F.3d at 855 ("RICO does not penalize parallel, uncoordinated fraud." (citing *Boyle*, 556 U.S. at 947 n.4)). Indeed, that coordination appears essential to the success of the alleged scheme. Rather than "a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest," therefore, the CitiPoint Enterprise looks more like a "truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest." *See Bible*, 799 F.3d at 655–56. Moreover, the alleged CitiPoint Enterprise lasted long enough for its members to pursue the enterprise's purpose of attracting investors and profiting from their purchases. *See Walgreen*, 719 F.3d at 853 (citing *Boyle*, 556 U.S. at 946). After

9

Plaintiffs closed on the Properties, Defendants continued to offer them additional properties and, through Mainstreet, charged him for unexplained costs and withheld tenant funds. Defendants have allegedly scammed at least eight other investors like Plaintiffs.

Defendants contend that Plaintiffs have failed to plead a distinct enterprise because there is "complete identity between the alleged 'persons' and the alleged members of the 'enterprise.'" (Dkt. 33 at 6–7); *see Baker*, 357 F.3d at 692. This argument rests on the mistaken view that an enterprise's members cannot be named as defendants. Of course, an entity cannot be liable under RICO for "operat[ing] *itself* unlawfully." *See Baker*, 357 F.3d at 691–92; *Walgreen*, 719 F.3d at 854; *see also Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384, 402 (7th Cir. 1984), *aff'd on other grounds*, 473 U.S. 606 (1985). Yet, a plaintiff may state a RICO claim against each member of an association-in-fact enterprise. *See Haroco*, 747 F.2d at 401 ("Where persons associate 'in fact' for criminal purposes . . . each person may be held liable under RICO for his, her, or its participation in conducting the affairs of the association in fact through a pattern of racketeering activity.").

To satisfy RICO's distinctness requirement, the enterprise can "be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization)" separate from the "person." *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985); *see also Cedric Kushner*, 533 U.S. at 162–63 ("The corporate owner/employee, a natural person is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that." (citing *McCullough*, 757 F.2d at 144)). Plaintiffs' allegations suggest that the CitiPoint Enterprise is distinct from each of the § 1962(c) Defendants who served as members. Unlike the enterprise's members—who are "persons," capable of holding property—

10

the CitiPoint Enterprise is a network of individuals and entities, associated in fact, and thus unable to "hold any interest in property or even be brought into court." *See Haroco*, 747 F.2d at 401. Accordingly, Plaintiffs have alleged the existence of a distinct enterprise.

Plaintiffs have also plausibly alleged that the § 1962(c) Defendants participated in operating or managing the CitiPoint Enterprise's affairs. *See Sabrina*, 869 F.3d at 589 ("[T]o satisfy the 'conduct' element, a plaintiff must allege that the defendant participated in the operation or management of the enterprise itself, and that the defendant played some part in directing the enterprise's affairs." (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727–28 (7th Cir. 1998))) (cleaned up); *Reves*, 507 U.S. at 179; *see also Bible*, 799 F.3d at 657. The precise hierarchy of the CitiPoint Enterprise may be unclear. Yet, Plaintiffs have alleged that Chojnacki and Mikosz, through Citypoint Illinois, attracted and purported to represent unwitting investors while Long and Sheth, through TCF National, Fairview Avenue, Mon Ami, and Page Street, purchased and resold properties to those investors. These allegations permit a reasonable inference that the § 1962(c) Defendants held leadership roles and took part in directing the enterprise.

### 2. Pattern of Racketeering Activity

A pattern of racketeering activity requires the completion of at least two predicate acts within ten years. *Bible*, 799 F.3d at 659; 18 U.S.C. § 1961(5). The two violations "must exhibit continuity plus relationship. Related predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sabrina*, 869 F.3d at 589 (quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 828 (7th Cir. 2016)) (cleaned up); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Continuity is 'centrally a temporal concept.'" *Empress*, 831 F.3d at 828 (quoting *H.J.*, 492 U.S. at 242). Analytically, "'[c]ontinuity' is both a

closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* (quoting *H.J.*, 492 U.S. at 241).

While Defendants do not challenge Plaintiffs' satisfaction of the relationship-plus-continuity test, they argue that Plaintiffs has failed to adequately plead predicate acts. (Dkt. 33 at 7–10). As predicate acts, Plaintiffs alleges mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Dkt. 2 ¶¶ 129–30). "The elements of mail fraud are: (1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *Bible*, 799 F.3d at 657 (quoting *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 298–99 (7th Cir. 2003)) (cleaned up); 18 U.S.C. § 1341. Wire fraud has the same elements, except that the defendant must use interstate wires instead of mail to further the scheme. *Bible*, 799 F.3d at 657 (citing *United States v. Green*, 648 F.3d 569, 577–78 (7th Cir. 2011)); 18 U.S.C. § 1343.

Plaintiffs' allegations of mail and wire fraud are subject to Rule 9(b)'s particularity requirement. *See Bible*, 799 F.3d at 658; Fed. R. Civ. P. 9(b). At a minimum, therefore, Plaintiffs must "describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Bible*, 799 F.3d at 658 (quoting *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001)). Yet, Rule 9(b) does not demand "form for form's sake": "although 'plaintiffs are not absolutely required to plead the specific date, place, or time of the fraudulent acts,' they still must 'use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" The requisite level of detail may vary from case to case. *Id.* (citing *Emery v. Am. Gen. Fin., Inc.*,

12

134 F.3d 1321, 1324 (7th Cir. 1998)). Since "fair notice is the 'most basic consideration underlying Rule 9(b),'" in a case involving multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994)).

Plaintiffs allege that "Defendants placed ads on the Internet and on social media with the intent to induce investors to participate in 'directly sourced' real estate opportunities." (*Id.* at ¶ 130(a)). Yet, Defendants "actually intended to sell the duped investor their own significantly marked-up property." (*Id.*) Plaintiffs allege further that Defendants engaged in a "sustained fiction," "replete with misrepresentations and calculated omissions" to mislead Plaintiffs into believing that they were buying property from an "old retiring couple" at a bargain. (*Id.* at ¶ 130(b)). Plaintiffs' RICO Count incorporates their previous, more detailed allegations. (*See id.* at 20). While some of these allegations lump Defendants together, others describe the "who, what, when, where, and how" of the fraud.

In July 2021, using wired communication, Mikosz replied to Michel's query about CitiPoint (now Citypoint Illinois). (*Id.* at ¶¶ 28–30). Through sustained text and phone interactions, Mikosz, from Illinois, told Michel, in Texas, that CitiPoint would help Plaintiffs buy underperforming real estate from "local landlord[s]" and make "substantial cash flow" with proper management. (*Id.* at ¶¶ 32–37). Mikosz sent Michel links to CitiPoint's website listing the Properties he later purchased. (*Id.* at ¶¶ 38–39, 55). She provided financials showing the Properties would be profitable at the "bargain" purchase prices and rent rolls showing the properties were fully leased. (*Id.* at ¶¶ 41–44, 56–61; Dkts. 2-3, 2-4, 2-6, 2-8). On September 28, 2021, Mikosz emailed Michel describing the Fairview Property as "turnkey," requiring "[n]o rehab." (Dkt. 2 ¶ 44; Dkt. 2-4). Plaintiffs allege Mikosz made these false statements with intent to defraud him.

13

(*Id.* at ¶¶ 33, 37, 77, 130); *see Bible*, 799 F.3d at 658 (observing that fraudulent intent "may be alleged generally" (citing Fed. R. Civ. P. 9(b)). All the while, Plaintiffs believed Mikosz, Chojnacki, and Chase RE were acting as their agents. (*Id.* at ¶¶ 32–33, 77).

On February 9, 2022, Michel's lender noticed a discrepancy about the owner of record for the Page Property. (*Id.* at ¶¶ 86, 88; Dkt. 2-11). Responding to Michel lender's email, Irwin reassured the lender that the owner of record was her client, Page Street—even though Page Street had not purchased the Page Property until December 29, 2021, two months after Plaintiffs' entered into the purchase contract in October 2021. (Dkt. 2 ¶¶ 87–89). Irwin allegedly made this misleading statement to prevent Plaintiffs from discovering Defendants' fraudulent misrepresentations about the Properties' owners. (*Id.* at ¶ 90).

Long and Sheth, using TCF National, Fairview, Mon Ami, and Page Street, participated in the alleged fraud by purchasing the Properties in December 2021, and selling them to Plaintiffs in January and February 2022. (*Id.* at ¶¶ 25–26, 92–93, 97–98). Considering the relationship between Long and Chojnacki, it is plausible to infer that her—and by extension, her LLCs—contributed to the scheme with fraudulent intent. Plaintiffs' well-pleaded allegations add up to at least two plausible instances of wire fraud—a sufficient pattern of racketeering activity. *See Empress*, 831 F.3d at 827 ("Each use of the wires can be an individual count of wire fraud and an individual RICO predicate for the purpose of establishing two predicate acts.").[4] Accordingly, Plaintiffs' § 1962(c) claim survives.

### B. Section 1962(d)

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To state a claim under

---

[4] Plaintiffs allege that "[t]he CitiPoint Enterprise conducted its racketeering activity, in part, . . . through the mailing of checks." (*Id.* at ¶ 128).

14

§ 1962(d), a plaintiff "must allege that the defendant (1) agreed to maintain an interest in or control of an enterprise, or to participate in an enterprise's affairs, (2) through a pattern of racketeering activity, and (3) that the defendant agreed that some member of the conspiracy (not necessarily the defendant herself) would commit at least two predicate acts in furtherance of those goals." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017) (citing *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011)). Subsection (d)'s concern is "the agreement to participate in an endeavor, which if completed would violate a substantive provision of the Act." *Id.* (citing *Goren*, 847 F.3d at 731–32); *see also Empress*, 831 F.3d at 822–23 ("As with any conspiracy, a RICO conspirator 'must intend to further an endeavor which, if completed, would satisfy all elements of a substantive criminal offense, but it suffices that he would adopt the goal of furthering or facilitating the criminal endeavor.'" (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997))); *Domanus*, 847 F.3d at 479. Here, that substantive provision is subsection (c).

Defendants argue that Plaintiffs' § 1962(d) claim fails because their § 1962(c) claim is deficient. (Dkt. 32 at 5–6); *see, e.g.*, *Patel v. Mahajan*, 2012 WL 3234397, at *5 (N.D. Ill. Aug. 6, 2012) ("When a § 1962(c) claim fails, a § 1962(d) claim premised on the same facts fails as well." (collecting cases)). Yet, Plaintiffs' have stated a claim under § 1962(c). Defendants raise no other arguments against Plaintiffs' § 1962(d) claim, and the Court declines to invent arguments on their behalf. *See Hicks v. Hepp*, 871 F.3d 513, 531 (7th Cir. 2017) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel." (quoting *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011))). Thus, Count I may proceed in its entirety.

## II. State-Law Claims (Counts II–VI)

In Plaintiffs' remaining claims under state law, they allege common-law fraud (Count II); violation of the ICFA (Count III); violation of the IRELA (Count IV); negligent misrepresentation (Count V); and unjust enrichment (Count VI). (Dkt. 2 ¶¶ 144–77). With scant citations to caselaw, Defendants contend that Counts II through V sound in fraud, and these claims fail to meet Rule 9(b)'s heightened pleading requirement "for the same reasons" as Plaintiffs' RICO claim. (Dkt. 33 at 10–13). In the same vein, Defendants point out that Plaintiffs' unjust-enrichment claim is "tied to the fate" of their other claims. (*Id.* at 12–13 (quoting *Vanzant v. Hill's Pet Nutrition*, 934 F.3d 730, 740 (7th Cir. 2019))); *see Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) ("Under Illinois law, there is no stand-alone claim for unjust enrichment."). Again, Plaintiffs have stated a RICO claim, and the Court need not invent arguments for Defendants. *See Hicks*, 871 F.3d at 531. By failing to develop further arguments on the sufficiency of Plaintiffs' state-law claims, Defendants have waived any arguments they might have made. *See Wernstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005); *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023).

## CONCLUSION

For the reasons above, Defendants' Motion to Dismiss [32] is denied in its entirety. Plaintiffs' claims in Counts I–VI may move forward consistent with this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: December 6, 2023