**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS MICHEL, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | No. 23 C 2546 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| MARCIN CHOJNACKI, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION & ORDER**

Out-of-state residents Thomas Michel and Stephane Verdier (collectively "Plaintiffs" or "Michel Plaintiffs") brought a complaint alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d), and various state-law claims. (Dkt. 110). It is one of 15[1] related cases, all in front of this Court, that Plaintiffs' attorneys have brought alleging that various overlapping Defendants engaged in a fraudulent real-estate investment scheme. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c).

Over the course of the litigation, numerous defendants settled in all of the related cases. Nonetheless, three separate sets of Defendants filed motions for summary judgment against Plaintiffs: Defendants Kendall Murphy and 1st Midwest Financial, Inc ("Murphy Defendants") (Dkt. 230); Defendants First National Financial, Inc. and Kathleen Long ("Long Defendants") (Dkt. 232); and Defendant Marcin Chojnacki along with related entities[2] (Chojnacki Defendants) (Dkt. 227).

[1] There were as many as 16 related cases, but one, *Ascot Specialty Insurance Company, A Rhode Island Corporation v. Midwest Title & Closing Services LLC et al*, 1:24-cv-05216, settled and closed on December 4, 2025.
[2] Marcin Chojnacki and the following entities: include the following natural persons and entities, only some of whom have been named in this case: Citypoint Illinois LLC; EJ Investment Group, Inc.; Fairview Avenue Properties LLC; Mainstreet Property Management LLC; Page Street Properties, LLC; and TCF National Holdings, Inc. (Dkt. 227).

In this case, Plaintiffs' Amended Complaint alleged that the Chojnacki Defendants violated 18 U.S.C.§ 1962(c), (d), (Dkt. 110 ¶¶ 160–170), while the Long Defendants and Murphy Defendants violated just § 1962(d), (*id.* at ¶¶ 171–180). This is a distinct choice from other related cases, such as *Malik*, where the Plaintiff alleged that the Long Defendants violated "§ 1962(c), (d)," or *Chen*, in which the Plaintiff alleged that the Murphy Defendants violated "§ 1962(c), (d)." In their Response, however, Plaintiffs' attorneys spend more time rambling through the general grievances animating the 15 related cases than focusing on the specific facts (anchored in the record) as they relate to the Michel Plaintiffs themselves. In doing so, they group the Long and Murphy Defendants in with the Chojnacki Defendants in their discussion of § 1962(c), (Dkt. 243 at 12–20).

It is a well-established principle that "a party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment." *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) (citing *Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014)). Plaintiffs' Response makes zero reference to a single element of § 1962(d), instead exclusively focusing on § 1962(c) and grouping the Long Defendants in with the other defendants in this case. After the defendant has made its showing, the non-moving party must come forth with evidence showing what facts are in actual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). If the non-moving party fails to do so, summary judgment is proper. *United States v. Selenske*, 882 F.2d 220 (7th Cir.1989). Thus, the Court strikes Plaintiffs' Response to the extent it makes § 1962(c) arguments as to the Long and Murphy Defendants.

That leaves the remaining motions, which are resolved on the substance. For the below reasons, the Chojnacki Defendants' Motion for Summary Judgment (Dkt. 227), the Long

Defendants' Motion (Dkt. 232) and the Murphy Defendants' Motion (Dkt. 230) are granted in part and denied in part. The Motions are granted with regard to Plaintiff's attempt to proceed under 18 U.S.C. § 1964 on a theory of speculative profit loss; they are otherwise denied as to the RICO claims, which remain in the case in accordance with the analysis herein. The Court also grants the Murphy Defendants' and the Long Defendants' Motion on Count VI for Unjust Enrichment. The Court grants the Chojnacki Defendants' Motion with regard to common-law fraud (Count II); violation of the IRELA (Count IV); and negligent misrepresentation (Count V); it denies the motion as to violation of the ICFA (Count III) and the follow-on claim of unjust enrichment (specifically for the Chojnacki Defendants) (Count VI), which remain in the case and will proceed to trial unless the parties can reach a settlement.

## BACKGROUND

The issue with the Long Defendants' briefing is not an anomaly. Related cases in this litigation have already made clear the shortcomings of the present record. To summarize some of the most pertinent issues discussed therein: Plaintiffs' attorneys regularly inserted entire paragraphs worth of fact into their 56.1 Response entries, routinely provided massive string cites that did not justify the stated assertions, and consistently inserted their legal allegations and conclusory assessments—including entire swaths of their expert reports—as statements of "fact," all of which the Court ignored. On multiple occasions. the Plaintiffs' attorneys cited to the allegations in the Complaint, rather than admissible evidence, in their 56.1 statements; multiple parties inappropriately admitted facts and then proceeded to provide further information in the response. The Defendants, meanwhile, routinely base their 56.1 statements on the plaintiffs' depositions in these cases and then proceed to object to plaintiffs' own citations to those exact same depositions—often the exact same *portion* of the depositions—as inadmissible hearsay

(though this characterization is frequently incorrect under the party-opponent admission exception under Federal Rule of Evidence 801(d)(2)(D)).

As made clear throughout the related cases, this Court has the discretion to deem admitted facts that either side does not expressly admit yet fails to dispute with citations to admissible evidence in the record. *See Dade v. Sherwin–Williams Co.*, 128 F.3d 1135, 1139 (7th Cir. 1997) (referring to L.R. 56.1's predecessor rule, the court affirmed the district court's taking as true uncontroverted facts alleged in the movant's statement and supported by references to the record); *see also Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies."). The Court thus proceeds by crediting only those statements that are adequately supported in the record and relevant to the resolution of the Motions. As explicated in the related cases, Defendants' frequent objections to cited emails on authenticity and hearsay grounds are overruled unless indicated otherwise in the text of the Court's analysis. The few other objections relevant to material facts are addressed below, alongside the relevant facts (that are undisputed unless otherwise indicated).

## I. Background

The Court also, at this point, adopts the general background information established as undisputed in the related cases without repopulating the same record with new citations. That includes the following: (Former defendant) Chase Real Estate, LLC, owned and managed by Christian Chase, provided certain services to brokers for a fee, including allowing the brokers to use the www.mychaseagent.com domain and the mychaseagent.com email. Defendant Marcin Chojnacki ("Chojnacki") is a licensed real estate broker and was the designated managing broker

for the Chase RE Roselle branch during the relevant time period. Robert Rixer ("Rixer") was a real estate broker for Chase RE Roselle during the relevant time period. Former Defendant Laurena "Lori" Mikosz also was a real estate broker for Chase RE Roselle during the relevant time period.

Chojnacki and Rixer jointly own Market Equities, Inc., a Delaware Corporation formed in 2022; Market Equities, Inc. is the sole owner of Illinois Assets as well as EJ Investments (since 2022) which in turn owns Mainstreet Property Management. Defendant EJ Investments (EJ) was formed by Chojnacki and Rixer in 2020 and was initially owned by Chojnacki and his then-fiancé Long (who also share children); in 2022, Chojnacki and Rixer's Market Equities, Inc., assumed ownership of EJ. Chojnacki's mother, Iwona, is EJ's bookkeeper. Rixer, Chojnacki and Long are signers on the EJ Investment bank account. Rixer and Chojnacki also co-own Citypoint Illinois LLC and have both been brokers there since 2023; Rixer became the managing broker for Citypoint in 2023. The Chojnacki Defendants dispute that Long herself worked for Citypoint any earlier than April 2025. Rixer and Chojnacki also co-owned the now dissolved Illinois Assets LLC.

Long is involved in this action through her alleged involvement in some of the financial entities that Plaintiff argues make up the Citypoint/Citipoint Enterprise: now dissolved Defendant First National Financial (FNF), now dissolved entity Defendant TCF National Holdings (TCF), and Prairie Raynor. Long was the sole shareholder, officer and director of FNF prior to its dissolution on December 20, 2024; she was also the sole signatory on FNF's bank account. Although Rixer and Chojnacki created TCF, Long was the sole shareholder and officer of TCF via FNF; Long was also the sole signatory on the bank account and sole person who had authority to act on behalf of the bank account for TCF, (which Defendants disputed in some cases but admitted on the *Malik* docket (Dkt. 436 ¶ 16), so the Court considers it admitted. Through this organizational structure, Long was the face of TCF; a design that Plaintiff asserts was to conceal Rixer and

Chojnacki from the public record, whereas the Chojnacki Defendants assert was a decision made for branding purposes.

Former Defendant Rachel Irwin was an employee of Chojnacki's now dissolved Chojnacki Real Estate, Inc. corporation, and then an employee of former Defendant Midwest Title and Closing Services, which she co-owned with Chojnacki. Irwin was also General Counsel for Rixer and Chojnacki's EJ Investments and a shareholder of XYZABC, Inc., a Delaware corporation that she co-owned with Chojnacki. XYZABC, Inc. was the manager of Midwest Title and Closing Services. Via these entities, Irwin communicated with Chojnacki, Rixer, and Long's lenders, organized entities, prepared operating agreements and bylaws, amendments to bylaws and operating agreements, and other legal documents for Chojnacki, Rixer, Long and their entities; Irwin also acted as "Seller's" attorney for Chojnacki, Rixer, Long and their entities.

This case also features the Murphy Defendants. Murphy was the sole shareholder, President, and Director of 1st Midwest Financial, Inc. ("1st Midwest") (prior to its dissolution) and went to school with Chojnacki. Murphy testified that 1st Midwest's business was to hold title to properties for agents. Murphy views this as a project designed to generate passive income, but Plaintiffs dispute this characterization, arguing that a trier of fact could conclude the purpose was to permit others to shield their identity.

The corporate address initially listed on the Secretary of State's website for 1st Midwest was 1046 Midwest Road, in Northbrook, before being properly corrected to 1046 Midway Road in Northbrook, which the Murphy Defendants contend was a clerical error while Plaintiff argues this was part of a broader scheme to intentionally misstate the address.

## II. The Michel Plaintiffs

With that, the Court turns to the facts that connect the Michel Plaintiffs with this complicated web of actors. Michel, a Texas resident, is a real estate investor with a portfolio of numerous condo and single-family properties in Texas and California purchased between 2006 and 2022, six of which he personally maintains as rental properties. (Dkt. 240 ¶¶ 1, 3). Verdier, a California resident, is Michel's investing partner for one property at issue in this lawsuit, the Page Street Property. (Dkt. 240 ¶¶ 8–9).

Michel was connected to Chase Real Estate via a friend (himself now another plaintiff in the related cases); Michel then had an introductory phone call with Mikosz, after which she began to send him listings. (Dkt. 240 ¶¶ 14–16). Around August or September 2021, Michel traveled to visit the Chase Real Estate Roselle office and testified that he met both Mikosz and Chojnacki at the office on this occasion, after which Mikosz took him on a road tour of investment properties. (Dkt. 240 ¶ 17; Dkt. 229, Ex. B, Michel Dep., 71:8-72:3.).

Michel became interested in the Blue Island property located on Fairview Avenue following his visit to the Chase Real Estate Roselle branch in September of 2021. (Dkt. 240 ¶ 21). Michel testified that he visited the property himself and reviewed the financial documents given to him regarding the property's performance. (Dkt. 240 ¶ 21). Michel ultimately signed a purchase and sale agreement for the Fairview Avenue property "as is" on September 28, 2021 for a purchase price of $450,000; he testified that he "probably" read it prior to signing. (Dkt. 240 ¶ 22).

Michel was interested in simultaneously purchasing an additional Blue Island property located on Page Court in October of 2021. (Dkt. 240 ¶ 30). Michel testified that he visited the property himself and reviewed the financial documents given to him regarding the property's performance. (Dkt. 240 ¶ 30). Michel ultimately signed a purchase and sale agreement for the Page

Court property "as is" on October 23, 2021 for a purchase price of $525,000; he testified that he had read the contract prior to signing it. (Dkt. 240 ¶ 31).

An inspection was performed on the Fairview Avenue property after the purchase and sales contract was signed and the inspection report was issued on November 2, 2021. (Dkt. 240 ¶ 23; Dkt. 229, Ex. F, Protech 12438 Fairview Ave Inspection Report.). An inspection was performed on the Page Court property after the purchase and sales contract was signed and the inspection report was issued on December 3, 2021. ((Dkt. 240 ¶ 32; Dkt. 229, Ex. I, Protech 12930 Page Court Inspection Report.). Michel testified that he reviewed the inspection report that was commissioned for both properties. (Dkt. 240 ¶¶ 23, 32).

Michel's lender for each property conducted appraisals. The lender sought tax returns from the seller via Michel and Mikosz; Mikosz declined over email to do so, writing, "What else can be used instead of tax returns? Give me another option to work with seller. Those guys are super old on paperwork but will try my best." (Dkt. 246 ¶ 76; Dkt. 239, Ex. 77). The Fairview Avenue property's appraisal and report, issued on December 16, 2021, valued the "as-is" condition of the property at $450,000; the Page Court property's appraisal and report, issued on January 8, 2022, valued the "as-is" condition of the property at $525,000. (Dkt. 240 ¶¶ 23, 33; Dkt. 229, Ex. G, 12438 Fairview Ave Appraisal Report; Dkt. 229, Ex. J, 12930 Page Court Appraisal Report). Michel testified that he read both appraisal prior to the respective closing and had no reason to believe that the appraised value was anything but accurate. (Dkt. 240 ¶¶ 24, 33). (As in other cases, Plaintiff contends that the documents should not count as an appraisal because they refer to nearby comp properties for its estimates despite the fact that the "sales comparison approach is [often seen as] the most reliable method for appraising the value." *Buchanan Energy (N), LLC v. Lake Bluff Holdings, LLC*, 2017 WL 1232973, at *6 (N.D. Ill. Apr. 4, 2017); nevertheless, the argument that

the report should be set aside by a factfinder does not bear on a factual statement about the report's contents.)

As part of his closing documents for both properties, Michel signed an "Agreement to Correct Building Code Violations Form" dated January 18, 2022, for Fairview and February 14, 2022, for Page Court. (Dkt. 240 ¶¶ 26, 35; Dkt. 229, Ex. H, 12438 Fairview Ave Agreement to Correct Building Code Violations Form; Dkt. 229, Ex. K, Exhibit K, 12930 Page Court Agreement to Correct Building Code Violations Form). In these forms, Michel agreed to correct all violations listed on the inspection report as required prior to his "as-is" scheduled closing, and that if violations were not corrected, Michel was subject to being cited to appear in housing court. (*Id.*) Michel closed on the Fairview Avenue property on January 18, 2022, with the final purchase price of $450,000. (Dkt. 240 ¶ 25). Michel closed on the Page Court property on February 14, 2022, with the final purchase price of $525,000. (Dkt. 240 ¶ 34). Michel offers scant evidence regarding the condition of the Page Court property in that he cites to his own Amended Complaint as the basis for these contentions despite the fact that "allegations in a complaint are not evidence." *Chen v. Yellen*, 2023 WL 2967428, at *3 (7th Cir. Apr. 17, 2023); (Dkt. 246 ¶ 93). After his purchase of the properties, Michel hired Main Street Property Management to manage both properties, retaining the contract for approximately eleven months before switching to a new management company. (Dkt. 240 ¶ 28).

Plaintiff now brings suit on the theory that while negotiating his deals, the Defendants were simultaneously executing their own secret purchase to flip a profit on Michel by way of actors he understood to be acting in his best interest. It is undisputed that Defendants Long, Chojnacki, Rixer and former Defendant Sheth made a $1,200,000 acquisition of four Fairview buildings (that jointly appraised for $1,325,000 on Dec. 3, 2021) inclusive of the building that Michel was in his contract-

to-close period for; Long (via TCF) took out a $803,400.00 mortgage for the acquisition. (Dkt. 246 ¶ 80; Dkt. 239, Ex. 63).

The parties diverge on the state of the buildings at time of sale, which Plaintiffs alleging severe tenant delinquencies in December 2021 and January 2022 based on a screen-grab of a rent roll and deposition testimony regarding alleged misrepresentations, all of which Defendants dispute. (Dkt. 246, 244, 248 ¶¶ 80, 84). Plaintiff offers up further evidence, largely through deposition testimony and an expert report incorrectly stuffed into the 56.1 Statement, regarding the funds from Michel's transaction as well as representations regarding the owner of the properties at time of purchase, that the Defendants dispute as immaterial to the present motion.

Michel seeks $295,000 for the difference that the Defendants allegedly pocketed between purchasing the two properties and then selling them to Michel, as well as $115,636 "from ongoing evictions, unexpected and undisclosed code violations, undisclosed and unexpected repairs, unexpected vacancies, and lost rents." (Dkt. 243 at 11). In his responses to interrogatories asking him to compute his claimed damages in this case, Michel referred to the "Master Spreadsheet" and his entire production of documents. (Dkt. 240 ¶ 39).

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). "A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "[S]peculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

## DISCUSSION

After removing the former Defendants, the remaining landscape of Count I is as follows: Michel alleges that the Chojnacki Defendants violated § 1962(c), and that the Long Defendants and Murphy Defendants violated § 1962(d).[3] Given the fact that the Defendants filed substantively comparable motions for summary judgment in all of the related cases, the Court assumes familiarity with the analysis laid out in *Malik et al v. Prairie Raynor LLC et al*, 23-cv-1182, and

[33] The Complaint says "18 U.S.C. 1962(c), (d)," for these Defendants, but does not discuss the specific conspiracy aspect; nevertheless, the Complaint clearly indicates where the Long and Murphy Defendants are only facing allegations under § 1962(d).

related dockets. Indeed, in this case, the Parties regurgitate their arguments with regard to the RICO claims almost verbatim, so the Court need not re-explicate its analysis on the same: there can be no "lost investment bargain" theory of RICO injury where the value of property sold is not as high as represented, but is at least what the Plaintiffs paid for it. On this record, nothing indicates that the Michel Plaintiffs did not get the benefit of their bargain, most certainly not Michel's conclusory opinions that he is somehow due the proceeds of a distinct sale in the name of playground fairness.

It is altogether different, however, to allege a RICO violation where the RICO scheme diminishes the actual value of property—in this case, Michel's claims about back-end damages. Defendants contend that the Michel Plaintiffs' claims about additional costs, repairs, and delinquent tenants are insufficient and vague, but those arguments speak not to the validity of a claimed injury for RICO standing purposes and instead go to the scope of damages (if any), a query that is best fit for a jury's resolution. While "logically related, a property interest and a measure of damages are not the same thing." *See Ivar v. Elk River Partners, LLC*. 705 F. Supp. 2d 1220, 1234 (D. Colo. 2010). Thus, Michel's claims can proceed on the alleged financial injuries descending from the representations made around the actual transaction. The Chojnacki Defendants' other general attempts to argue that any bad acts were Mikosz' alone and that there was no enterprise falls flat on the same grounds as explained in the related cases. A full review of the record, including facts contested and uncontested, could conceivably allow a reasonable jury to find that the Chojnacki Defendants participated in the operation or management of an enterprise to lure in investors through misrepresentations of building ownership, condition, and—with regard to tenants—its occupancy and rental rates.

Finally, the analysis laid out in the related cases governs the Long and Murphy Defendants' contentions regarding their potential liability as conspirators. The argument that no reasonable jury could find for Plaintiffs on this claim is unpersuasive. Plaintiffs' evidence, though shaky at times, could sufficiently tie the Murphy and Long Defendants to the enterprise (even aside from the prior romantic relationship with Long and Chojnacki, which would be insufficient on its own to meet this standard). The significant financial overlap, alleged lies regarding property ownership, entanglements disguising actual owners, and copious legal entities could allow a jury to infer the Long and Murphy Defendants knowing participated in the scheme to saddle investors with misrepresented properties. Although mere allegations of a conspiracy are insufficient to withstand a motion for summary judgment, a "conspiracy may be proven by circumstantial evidence and should not be taken from the jury as long as there is a possibility that a jury can reasonably infer from the circumstances that the required elements of conspiracy have been met." *See Chicago Miracle Temple Church, Inc. v. Fox*, 901 F.Supp. 1333, 1348 (N.D.Ill.1995). Although it is a close question whether a jury could find that there was an agreement, drawing all inferences in favor of Plaintiffs, the Motions for Summary Judgment on Count I are otherwise denied.

## I. State-Law Claims (Counts II–VI)

Next, Chojnacki moves for summary judgment on the Chen Plaintiffs' state law claims for common-law fraud (Count II), violation of the ICFA (Count III); violation of the IRELA (Count IV); and negligent misrepresentation (Count V). (Dkt. 228). Plaintiffs' responses on the issues offer scant case law, instead broadly regurgitating the generalized animating grievances of the amended complaint. Accordingly, most of the state law claims cannot survive this stage in the litigation.

**a. Count II: Common Law Fraud and Count V: Negligent Misrepresentation**

"In order to establish fraud under Illinois law, a plaintiff must prove that (1) defendant made a false statement; (2) of material fact; (3) which defendant knew or believed to be false; (4) with the intent to induce plaintiff to act; (5) the plaintiff justifiably relied on the statement; and (6) the plaintiff suffered damage from such reliance." *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000) (citing *Williams v. Chicago Osteopathic Health Sys.*, 654 N.E.2d 613, 619 (Ill. 1995)).

Negligent misrepresentation has essentially the same elements, except "the defendant need not know that the statement is false. His own carelessness or negligence in ascertaining its truth will suffice for a cause of action." *Doe v. Dilling*, 228 Ill. 2d 324, 360 (Illinois 2008). "For negligent misrepresentation, a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information." *Id.* (citing *Board of Education of City of Chicago v. A, C & S, Inc.,* 546 N.E.2d 580 (Illinois 1989)).

Starting with Count II: the Chojnacki Defendants argue that the record is "devoid" of any evidence that Chojnacki intentionally misrepresented anything to Michel, noting that the only documented conversation involves Chojnacki offering a generic description of the advantages of full-service real estate firms. (Dkt. 228 at 9-10). Plaintiff makes no attempt to dispute this picture, returning instead to the general theory of the 15 related cases rather than any specific allegedly false statements from the Chojnacki Defendants. (Dkt. 243 at 22).

Reading between the lines, the Chojnacki Defendants next defend against a fraud claim based on omission, as "[m]ere silence in a transaction does not amount to fraud." *Blaz v. Michael Reese Hosp. Found.*, 191 F.R.D. 570, 575 (N.D. Ill. 1999). But "silence accompanied by deceptive conduct or suppression of material facts ... can give rise to concealment and 'it is then the duty of

the party which has concealed information to speak.' " *Hirsch v. Feuer*, 702 N.E.2d 265, 273 (1998). Defendants contend that Chojnacki and Michel had only "one brief exchange," and thus Chojnacki had no obligation to step in and correct the record (though Defendants also contend there was no record to correct). (Dkt. 228 at 10). Yet this, too, oversimplifies the record: a jury could find that Michel's testimony, combined with emails and records from his interaction with Chase Real Estate, led him to believe that Chojnacki did, indeed, have a sufficient relationship with Plaintiffs to substantiate a claim of fraud-by-omission.

This, however, skips over a crucial step: the existence of a duty to disclose the material fact in question presents an issue of law for the court, not an issue of fact for the jury. *See, e.g.*, *Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, 2021 WL 10929882, at *4 (N.D. Ill. Mar. 5, 2021), aff'd, 66 F.4th 1094 (7th Cir. 2023) (citing Illinois pattern jury instruction); *Equity Capital Corp. v. Kreider Transp. Serv., Inc.*, 967 F.2d 249, 253 (7th Cir. 1992) (applying Illinois law). Yet not only did Plaintiffs not allege fraud-by-omission in his complaint, they made no attempt to defend on this point in their Response with regard to Count II. *See United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010) (at the summary judgment stage, it is "not the district court's job to sift through the record and make (a party's) case for him"). As courts have often admonished, "summary judgment is the 'put up or shut up' moment in the life of a case," *see, e.g.*, *In re Airadigm Communications, Inc.*, 616 F.3d 642, 657 (7th Cir.2010), and while it is not entirely impossible that Michel might have made a case against some or all of the Chojnacki Defendants, it is neither required nor appropriate for the Court to "sift through the record and make [the] case for him." *See 5443 Suffield Terrace*, 607 F.3d at 510. Accordingly, the Chojnacki Defendants are entitled to summary judgment on Count II.

Returning briefly to the negligent misrepresentation claim:[4] Plaintiff did not specifically allege a duty in the Amended Complaint. (Dkt. 110 at 33). Nor does Plaintiff meaningfully address the Defendants' arguments as to negligent misrepresentation in the Response. (Dkt. 243 at 22-23). Ultimately, though, what dooms Plaintiff's claim here is the same lack of prosecution that impedes the common law fraud claim. After the defendant has made its showing, the non-moving party must come forth with evidence showing what facts are in actual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). If the non-moving party fails to do so, summary judgment is proper. *United States v. Selenske*, 882 F.2d 220 (7th Cir.1989). Plaintiffs do not make the requisite arguments here, and the court will not do it for them. *See Little v. Cox's Supermkts.*, 71 F.3d 637, 641 (7th Cir. 1995) (holding that the court "is not required to scour the party's various submissions to piece together appropriate arguments" as it "need not make the lawyer's case").

**b. Count III: ICFA**

In Count III, Plaintiff alleged that Chojnacki violated Illinois's consumer protection statute, the ICFA. *See* 815 ILCS 505/1–505/12. "To prevail on a claim under the ICFA, a plaintiff must plead . . . that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quotation marks omitted). "The Illinois Consumer Fraud Act affords broader protection to consumers than the cause of action available under common-law fraud." *Letoski v. Coca-Cola Co.*, 753 F. Supp. 3d 650, 664 (N.D. Ill. 2024)*; Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734,

[4] While Illinois law generally bars plaintiffs from asserting tort claims such as negligent misrepresentation where they seek to recover only economic losses, it is subject to certain exceptions where "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations," an exception that has been applied to real estate brokers. *See Am. Inter-Fid. Corp. v. M.L. Sullivan Ins. Agency, Inc.*, 2016 WL 3940092, at *8 (N.D. Ill. July 21, 2016) (collecting cases). The named real estate broker on Michel's sale contract was Mikosz herself, who has settled her claim with Michel.

751 (Illinois 1994) ("[T]he intent of the Consumer Fraud Act was to lessen the burden of proof in a claim for certain misrepresentations."). "Therefore, to state a cause of action for statutory fraud, a party need not prove all the elements of common law fraud." *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 898 N.E.2d 194, 203 (Ill. App. 2008) (citation omitted).

" 'Intent' under the Act means 'that the defendant intends for the plaintiff to rely on the deception' rather than 'the defendant's intent to deceive' under common-law fraud." *Letoski*, 753 F. Supp. 3d at 664. Conduct is deceptive "if it creates a likelihood of deception or has the capacity to deceive" a "reasonable consumer." *Benson*, 944 F.3d at 646. It is unfair if it offends public policy; is "immoral, unethical, oppressive, or unscrupulous"; and causes substantial injury to consumers. *Id.* at 647.

A buyer must prove either 1) "the buyer would have acted differently knowing the information" or the act "concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Hanson-Suminski*, 898 N.E.2d at 203 (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 584 (Illinois 1996)). "Furthermore, a plaintiff's actual reliance is not required, but a plaintiff must show that defendant's consumer fraud proximately caused their injury." *Id.*

Here, a reasonable jury could find that Chojnacki's behaviors, even if often one-step-removed from direct communication with Michel, was designed to induce Michel's reliance on the inefficient and old-school seller narrative. In Response, Plaintiff points to some behavior that is perfectly legal, such as identifying longtime owners and offering them opportunities to sell. (Dkt. 243 at 22). But Plaintiff also has presented evidence of a potential scheme to convince sellers of a bargain real estate deal that simultaneously provided Defendants with a near-guaranteed investment opportunity. (*Id.*) A jury could find that the scheme alleviated some of the traditional

risks of real estate investments for Defendants—namely, the ability to flip the property for a profit—by ensuring a buyer was ready to go on the flip before Defendants even finalized their initial purchase. On this record, it remains disputed whether Chojnacki's conduct "concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Hanson-Suminski*, 898 N.E.2d at 203.

Defendants also contend that Michel has presented no evidence of damages because he has not sufficiently tied damages to this part of his claim. (Dkt. 228 at 13). Yet Michel has offered some evidence on the alleged six-figure damages from unexpected repairs, unexpected code compliance, unexpected building code violations and evictions, and it is up to the jury to assess the validity, if any, of that sum.

In analyzing a claim under the Illinois statute, courts consider "the totality of the information made available to the plaintiff." *Benson*, 944 F.3d at 646 (citing *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)). That inquiry, by its definition, will peer beyond the singular "seller's identity" quotation to assess the full picture available to Michel in his dealings with Defendants.

**c. Count IV: Illinois Real Estate License Act**

Under the Illinois Real Estate License Act, licensees "shall treat all customers honestly and shall not negligently or knowingly give them false information." 225 Ill. Comp. Stat. Ann. 454/15-25. "A licensee engaged by a seller client shall timely disclose to customers who are prospective buyers all latent material adverse facts pertaining to the physical condition of the property that are actually known by the licensee and that could not be discovered by a reasonably diligent inspection of the property by the customer." *Id.* The Act "protects real estate licensees when they make false statements if the false information was provided by the property owner and the broker had no

reason to believe the information was incorrect." *See Aharon v. Babu*, 2023 WL 2214429, at *6 (N.D. Ill. Feb. 24, 2023). In other words, it requires a plaintiff to prove "that the false information (i) did not come from the seller, (ii) was material to the buyer, and (iii) caused damages." *Edson v. Fogarty*, 138 N.E.3d 238, 246 (Ill. App. 2019).

Defendants acknowledge that Michel was a customer, and thus, under the Act, Chojnacki had a duty to refrain from supplying him false information. (Dkt. 228 at 14). Instead, they argue that "Chojnacki did not supply [Michel] with *any* information specific to the properties he purchased." *Id.* They point to the fact that Michel has only recounted one interaction with Chojnacki and has testified that the substance of that conversation was the general overview of real estate. *Id.*

Rather than engage with this contention on the substance, Plaintiff recites the general theory of the case with conclusory assessments, declaring the arguments "without merit" and following that with an excerpt from a expert report and general references to dozens of exhibits without citation, the majority of their 56.1 statement, and zero references to case law. Mere conclusory assertions, whether made in pleadings or in affidavits, are not sufficient to defeat a proper motion for summary judgment. *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985).

"Judges are not like pigs, hunting for truffles buried in" the record. *Albrechtsen v. Bd. of Regents*, 309 F.3d 433, 436 (7th Cir. 2002). Thus, the Court will not "address those arguments which it finds incomprehensible." *Pope v. United States*, 2012 WL 5389807, at *2 (N.D. Ill. Nov. 1, 2012) (citing *Smith v. Town of Eaton, Ind.*, 910 F.2d 1469, 1470-71 (7th Cir. 1990)); *United States v. Anzaldi*, 2013 WL 393326, at *5 (N.D. Ill. Jan. 31, 2013) ("the Court refuses to address nonsensical arguments") (citing *Morton v. Greer,* 61 F.3d 906, 906 (7th Cir. 1995) (stating that

briefs which contain no identifiable argument will be dismissed)); *Schramm L. Grp., LLC, v. Pitney Bowes Inc.*, 2026 WL 636820, at *2 (N.D. Ill. Mar. 6, 2026) ("The Court needn't consider . . . 'underdeveloped, conclusory, and undeveloped' argument[s].") (cleaned up) (quoting *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012)); *United States v. Vance*, 2022 WL 1831138, at *1 (7th Cir. June 3, 2022) ("courts need not address arguments . . . that are 'too weak to require discussion' ") (quoting *United States v. Joiner*, 988 F.3d 993, 995 (7th Cir. 2021)); *Smith,* 910 F.2d at 1470–71 (the Court "cannot be called upon to supply legal research and organization to flesh out a party's arguments"). Accordingly, the Chojnacki Defendants are entitled to summary judgment on Count IV.

**d. Count VI: Unjust Enrichment**

That leaves the final state-law claim: Count VI: unjust enrichment. All three sets of Defendants moved for summary judgment on Count VI, the only state-law claim pleaded against the Murphy Defendants and the Long Defendants. As they did in *Stafford* and *Chen*, Plaintiffs' attorneys once again incorrectly claim that Defendants' argument "relies entirely" on *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803 (7th Cir. 2018), a case featured in the Murphy Defendants' brief (Dkt. 230 at 5) and the Long Defendants' brief (Dkt. 232 at 6), without acknowledging the case law in the Chojnacki Defendants' brief (Dkt. 229 at 14). Even so, Plaintiffs' contentions are misinformed. As this Court has already spelled out in *Malik*, Illinois law does not consider unjust enrichment an independent cause of action. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (finding no standalone claim for unjust enrichment under Illinois law); *Flores v. Aon Corp.*, 242 N.E.3d 340, 356 (Ill. App. 2023) (quoting

*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 484 N.E.2d 349 (Ill. App. Ct. 1985), *aff'd*, 499 N.E.2d 1319 (Ill. 1986)).

To the extent that the unjust enrichment claim is premised on the ICFA, the unjust enrichment claim can survive dismissal with regard to the Chojnacki Defendants. *See id.* at 741–42; *Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim* of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."). The unjust enrichment claim is barred as a tag-on to the alternative state law claims for the Chojnacki Defendants. Similarly, because there are no alternative state law claims as to the Long and Murphy Defendants, their Motions are granted with regard to Count VI. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021). ("To the extent that the unjust enrichment claim is premised on the ICFA or [common-law fraud] claims, the unjust enrichment claim cannot survive the proper dismissal of those matters.").

## CONCLUSION

For the below reasons, the Chojnacki Defendants' Motion for Summary Judgment [227], the Long Defendants' Motion [232], and the Murphy Defendants' Motion [230] are granted in part and denied in part. The Motions are granted with regard to Plaintiff's attempt to proceed under 18 U.S.C. § 1964 on a theory of speculative profit loss; they are otherwise denied as to the RICO claims, which remain in the case in accordance with the analysis herein. The Court also grants the Murphy Defendants' and the Long Defendants' Motion on Count VI for Unjust Enrichment. The Court grants the Chojnacki Defendants' Motion with regard to common-law fraud (Count II); violation of the IRELA (Count IV); and negligent misrepresentation (Count V); it denies the

motion as to violation of the ICFA (Count III) and the follow-on claim of unjust enrichment (specifically for the Chojnacki Defendants) (Count VI), which remain in the case and will proceed to trial unless the parties can reach a settlement.

Virginia M. Kendall
United States District Judge

Date: September 9, 2026